1

2

3

4

5

6

7

8

The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

| | |
|---|---|
| PRINCIPAL FINANCIAL SERVICES, INC., an Iowa corporation,<br><br>Plaintiff,<br><br>v.<br><br>PRINCIPAL WARRANTY, LLC, d/b/a PRINCIPAL WARRANTY CORP.,<br><br>Defendant. | Case No. 2:22-cv-01096-RSL<br><br>DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES<br><br>**NOTED ON MOTION CALENDAR: November 18, 2022** |

## I. OVERVIEW AND RELIEF REQUESTED

17

18

19

20

21

22

23

24

25

26

Principal Warranty, LLC ("PWC") is a Washington company that has openly been doing business using PRINCIPAL WARRANTY and PRINCIPAL WARRANTY CORP. since at least 2009 in conjunction with its provision of motor vehicle service contracts, GAP coverage, drive-train warranties, and similar products (collectively, "Vehicle Service Contracts"), along with training on those products, exclusively to automobile and RV dealers. In the thirteen years since its founding, PWC is not aware of any instances of consumer confusion between plaintiff Principal Financial Services, Inc. ("PFS") and PWC. Thompson Decl., Ex. A, ¶¶ 4, 5, 22. All of these allegations come from a declaration that PWC filed in conjunction with its successful motion to dismiss PFS' previous complaint, which litigation PFS references in the current

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

Complaint (ECF No. 1, at 4 n. 1) and of which the Court can and should take judicial notice.
FRE 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

Plaintiff PFS is wrong to suggest that the *Twombly/Iqbal* plausibility standard applies to affirmative defenses; rather, the "overwhelming majority view . . . is that the concept of plausibility has no application to affirmative defenses." *Leviton Mfg. Co. v. Pass & Seymour, Inc.*, 264 F. Supp. 3d 421, 427 (E.D. N.Y. 2017). Regardless, PFS already knew the factual basis for most of PWC's affirmative defenses from its answer and the declaration in the prior litigation. As explained below, each of PWC's affirmative defenses is properly pleaded and legally well-supported. PFS' motion should be denied.

## II. <u>STATEMENT OF FACTS</u>

Plaintiff PFS is a wholly-owned subsidiary of the publicly-traded, Fortune 500® company, Principal Financial Group, Inc. Compl., ¶¶ 2-3. PFS alleges it has used its PRINCIPAL mark since about 1960 for a variety of financial, investment, retirement, insurance and asset management services. Compl., ¶ 15. Plaintiff claims it has established a "family" of PRINCIPAL-formative marks for those services. Compl., ¶ 16. Notably, plaintiff PFS does not claim to provide Vehicle Service Contracts, nor any similar goods or services, to vehicle dealers. PFS does claim that some or all of its marks qualify as "famous." Compl.,¶¶ 50-53.

As explained to PFS in the previous Iowa litigation, PWC has been openly doing business using PRINCIPAL WARRANTY and PRINCIPAL WARRANTY CORP. since at least 2009 to provide Vehicle Service Contracts and related services exclusively to automobile and RV dealers. Thompson Decl., Ex. A, ¶¶ 4-5; Answer (ECF No. 2), at 8. The majority of PWC's business is on the West Coast; however, it operates in many other states (just not in Iowa). Thompson Decl., Ex. A, ¶ 19. By no later than 2011, PWC had established its website at www.principalwarrantycorp.com, and has used that website (screenshots of which are attached to the plaintiff's Complaint, ECF No. 1) continuously ever since. Answer (ECF No. 2), at 8.

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION
TO STRIKE AFFIRMATIVE DEFENSES - 2
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

1    After doing business openly using PRINCIPAL WARRANTY and PRINCIPAL

2    WARRANTY CORP. for about a decade without any instances of confusion with anyone, PWC

3    applied for federal trademark registration in 2019. Complaint, ¶ 8. PFS thereafter contacted PWC

4    for the first time, and objected to PWC's attempt to register those marks. Complaint, ¶ 9. That

5    was PWC's first notice that PFS thought the name PWC had been openly using for a decade

6    somehow infringed on PFS' rights. PWC thereafter abandoned those applications, and hoped that

7    would be the end of it.

8    Nevertheless, in March 2022, Plaintiff initiated a trademark action in Iowa, which was

9    dismissed for lack of jurisdiction. Complaint, at 4 n. 1. Plaintiff initiated the current action in the

10    Western District of Washington on August 4, 2022.

11    ### III. <u>ARGUMENT AND AUTHORITIES</u>

12    **A.    Striking Affirmative Defenses is a Disfavored Remedy.**

13    Rule 12(f) grants the Court discretion to "strike from a pleading an insufficient defense or

14    any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The

15    function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise

16    from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v.*

17    *A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1993). The moving party bears the burden of

18    showing that a challenged defense is insufficient. *Cont'l Cas. Co. v. Duyzend,* No. C13-1508

19    MJP, 2014 WL 468014, at *3 (W.D. Wash. Feb. 5, 2014). "The key to determining the

20    sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the

21    defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).

22    Motions to strike are disfavored because they are a drastic remedy and should not be

23    granted unless "it is clear that the matter to be stricken could have no possible bearing on the

24    subject matter of the litigation." *Duyzend*, No. C13-1508 MJP at *3 (*citing In re New Century*,

25    588 F.Supp.2d 1206, 1220 (C.D. Cal. 2008)). Courts usually deny such motions unless the

26    affirmative defense's insufficiency is obvious and its continued inclusion in the matter would

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION
TO STRIKE AFFIRMATIVE DEFENSES - 3
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

prejudice the party moving to strike. *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2nd Cir. 1984).

Instead, rather than strike the defense, courts generally treat the pleading as if correctly designated and allow it to be challenged later after factual discovery if facts fail to support it. *See* Fed. R. Civ. P. 8(c)(2); *Ohio Sec. Ins. Co. v. Garage Plus Storage Aviation LLC*, No. 3:21-CV-5579-BHS, 2022 WL 1213319, at *3 (W.D. Wash. Apr. 25, 2022) (even if a defense is insufficient as an affirmative defense and "[i]f a party mistakenly designates ... a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated ...."). Accordingly, absent a clear error or deficiency in pleading, an affirmative defense should stand as pleaded.

## B.  Matters of Avoidance and Affirmative Defense Require Only Notice Pleading, and May Include Matters That Rebut the Plaintiff's Case.

"[C]ourts in this district have generally interpreted 'fair notice' to require something far less than the specificity required of a complaint under *Twobly* and *Iqbal*." *Palmason v. Weyerhauser*, No. C11-695RSL, 2013 WL 392705, *1 (W.D. Wash. Jan. 31, 2013). Traditionally, simple lists of affirmative defenses were usually sufficient so long as they provided fair notice of the defense. Anthony Gambol, *The Twombly/Iqbal Plausibility Pleading Standard and Affirmative Defenses: Gooses and Ganders Ten Years Later*, 41 Pace L. Rev. 193, 199 (2020); see also Fed. R. Civ. P. 8(c)(1) (providing bullet-pointed list). The majority of district courts have transitioned away from applying the plausibility pleading standard in favor of the notice pleading standard for affirmative defenses. *See Whetstone Indus., Inc. v. Yowie Grp., Ltd.,* No. 3:17-cv-1286-J-20PDB, 2019 U.S. Dist. LEXIS 177086, at *2 (M.D. Fla. Oct. 11, 2019) (noting a majority of courts do not extend the plausibility pleading standard to affirmative defenses); *Leviton Mfg. Co. v. Pass & Seymour, Inc.*, 264 F. Supp. 3d 421, 427 (E.D. N.Y. 2017) ("The overwhelming majority view, to which I subscribe, is that the concept of plausibility has

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION
TO STRIKE AFFIRMATIVE DEFENSES - 4
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

no application to affirmative defenses."). By this standard, a defendant need only raise the affirmative defense, but need not outline the facts specific to allege it.

That is congruent with Fed R. Civ. P Rule 8(c), which states merely that in "responding to a pleading, a party must affirmatively state any avoidance or affirmative defense" and then includes a non-exclusive list of affirmative defenses.  Contrast that with Rule 8(a)(2), which requires "a short and plain statement of the claim ***showing*** that the pleader is entitled to relief." Fed. R. Civ. P. R. 8(a)(2) (emphasis added). The Rules do not require a defendant to include any "short and plain statement" or to "show" that it is entitled to the affirmative defense. Rather, all a defendant must do is affirmatively state any "avoidance" (e.g., any defect or demurrer) or any "affirmative defense" (which can include matters, such as laches, that would provide a complete defense even if plaintiff's allegations are all true).

Plaintiff asserts that any affirmative defense that only addresses the elements of the cause of action should be stricken as redundant. Motion, at 4-5. Not so. Rule 8(c) allows defendants to plead both matters of avoidance (e.g., demurrers) as well as "affirmative defenses." *See* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1271 (4th ed. 2022) (noting that defendants often plead matters that may not technically be affirmative defenses but nonetheless fall within Rule 8(c)'s residuary clause and should not be penalized for doing so). While the Ninth Circuit has stated that a defense that raises a defect in the plaintiffs' prima facie case is not an "affirmative defense," it did so in the context of whether the defendant had waived such a defense by failing to plead it affirmatively (and held that the defendant had not so waived the defense). *Zivkovic v. Southern Cal. Ed. Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). It is not unusual in this district for a defendant to plead as an affirmative defense something that solely rebuts plaintiff's facts without alleging new facts or circumstances. *See Lister v. Hyatt Corp.*, No. C18-0961JLR, 2019 WL 5190893, at *8 (W.D. Wash. Oct. 15, 2019) (denying in part motion to strike affirmative defenses that only negated plaintiffs complaint without offering new facts).

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION
TO STRIKE AFFIRMATIVE DEFENSES - 5
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    **C.    Each of PWC's Affirmative Defenses is Proper.**

2          1.    <u>Failure to state a claim is a proper affirmative defense</u>.

3          While Rule 8(c) contains a non-exhaustive list of possible affirmative defenses,

4    Rule 12(b) has a closed list of seven affirmative defenses that "may" be asserted by motion.  Fed.

5    R. Civ. P. R. 12(b). One of those affirmative defenses is "failure to state a claim upon which

6    relief can be granted." Fed. R. Civ. P. R. 12(b)(6). If such a motion is to be made, it "must" be

7    made before filing a responsive pleading (i.e., answer). Fed. R. Civ. P. R. 12(b). However, the

8    rule itself makes clear that there is no requirement to bring such a motion, and that the defense

9    may be instead be joined "with one or more other defenses or objections in a responsive pleading

10   [i.e., an answer]." Fed. R. Civ. P. Rule 12(b); *accord Lister*, No. C18-0961JLR at *4 (refusing to

11   strike affirmative defense of failure to state a claim).

12         The Federal Rules themselves confirm that "failure to state a claim upon which relief can

13   be granted" is an affirmative defense, and that it can be pleaded affirmatively in an answer.

14   Plaintiff's arguments otherwise are contrary to the explicit language of the Federal Rules.

15         2.    <u>PWC's "coexistence" defense is proper</u>.

16         PWC's second affirmative defense pleads basic facts of which plaintiff PFS was already

17   aware – that PWC started using its marks in 2009, had established a robust website by 2011, and

18   has used its marks (albeit in an industry in which plaintiff does not do business) for over a

19   decade without any known instances of confusion.  Such coexistence without any confusion

20   creates a strong presumption that such consumer confusion will remain unlikely, and is a proper

21   affirmative defense. *E.g.*, *Prudential Ins. Co. v. Gibraltar Financial Corp.*, 694 F.2d 1150, 1155-

22   56 (9th Cir. 1982); *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1104-1105

23   (9th Cir. 2004); *Pinkette Clothing, Inc. v. Cosmetic Warriors, Ltd.*, 894 F.3d 1015, 1027 – 1029

24   (9th Cir. 2018) (all affirming that long period of coexistence defeated trademark infringement

25   claims).

26

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION
TO STRIKE AFFIRMATIVE DEFENSES - 6
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

3. <u>PWC's "distinct services" defense is proper.</u>

Nowhere in PFS' complaint does it claim to provide Vehicle Service Contracts or anything like Vehicle Service Contracts, nor does it plead that it provides goods and services to automobile and RV dealers. As pointed out in the affirmative defense, "none of PFS' active PRINCIPAL filings in the United States Patent and Trademark Office include identifications for auto, automobile, automotive vehicle, car, motorcycle, or similar transportation-focused terms." That defendant PWC provides distinct services is a proper affirmative defense.

Services are related when "they are complementary, sold to the same class of purchasers, or similar in use and function." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1163 (9th Cir. 2021). However, "[w]hen fundamental functionality is distinct, the case supports a finding of no confusion." *Real Networks, Inc. v. QSA Tool Works, LLC*, Case No. C07–1959 MJP, 2009 WL 2512407, at *4–5 (W.D.Wash. Aug.14, 2009). Courts have previously held that even companies in the same industry that provide distinct goods and services do not infringe. *See New Flyer Indus. Canada ULC v. Rugby Aviation, LLC,* 405 F. Supp. 3d 886, 900 (W.D. Wash. 2019) (holding that New Flyer's buses are distinct from San Juan Airlines' flights); *Sand Hill Advisors, LLC v. Sand Hill Advisors*, LLC, 680 F. Supp. 2d 1107, 1119 (N.D. Cal. 2010) (finding parties had sufficiently distinct services where Plaintiff wealth management firm provides advice on investment planning and Defendant purchases and manages commercial properties for its own account); *RIPL Corp. v. Google Inc.*, No. 2:12-CV-02050-RSM, 2014 WL 1350810, at *10 (W.D. Wash. Apr. 3, 2014) (finding two software notification features were functionally different when targeted to different user types); *Cascade Fin. Corp. v. Issaquah Cmty. Bank*, No. C07-1106Z, 2007 WL 2871981, at *13 (W.D. Wash. Sept. 27, 2007) (finding the parties provided distinct services in the financial industry).

4. <u>PWC's "crowded field" defense is proper.</u>

PWC pleads that plaintiff's marks "are not sufficiently famous or distinctive and the field is crowded," and explains that a June 27, 2019 search of the records of the Trademark Office

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION
TO STRIKE AFFIRMATIVE DEFENSES - 7
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

1  showed 124 active filings, 107 active registrations, and 15 Class 36 active filings for marks

2  involving PRINCIPAL by other parties. Such a "crowded field" defense is a proper affirmative

3  defense.

4      A crowded field is evidence that a consumer is unlikely to be confused because "in a

5  crowded field of look-alike marks (e.g., hotel names including the word "grand"), consumers

6  may have learned to carefully pick out one mark from another." *United States Pat. & Trademark*

7  *Off. v. Booking.com B. V.,* 140 S. Ct. 2298, 2307 (2020). In a "crowded field of similar marks,

8  each member of the crowd is relatively 'weak' in its ability to prevent use by others in the crowd.

9  Simply put, a mark which is hemmed in on all sides by similar marks on similar goods cannot be

10  very distinctive." *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc*., 856 F.2d 1445, 1449 (9th

11  Cir. 1988); *accord Nautilus Grp., Inc. v. Savvier, Inc.,* 427 F. Supp. 2d 990, 995 (W.D. Wash.

12  2006) (same).

13      Where a business uses a common or versatile term, the existence of a crowded field is a

14  valid defense against trademark infringement. *Nordstrom, Inc. v. 7525419 Canada Inc*., No.

15  C12-1387 TSZ, 2012 WL 12507605, at *7 (W.D. Wash. Dec. 27, 2012) (finding a crowded field

16  where "rack" is an ordinary English word used in over 500 marks, 70 of which are in the same

17  class). Where multiple other businesses use the term, a crowded field exists. *RIPL Corp.*, No.

18  2:12-CV-02050-RSM at *9 (holding that in the internet service industry, ripple-associated

19  trademarks exist in a crowded field because at least seven other marks use the same word); *Halo*

20  *Management, LLC v. Interland, Inc.,* 308 F.Supp.2d 1019, 1034 (N.D.Cal.2003) (holding that in

21  the internet service industry, marks bearing the word "halo" exist in a crowded field because

22  there are dozens of marks using the same word).

23      5.   PWC's "descriptiveness" defense is proper.

24      PWC's Fifth Affirmative Defense pleads that the term "principal" is descriptive and thus

25  PFS' rights are relatively narrow. PWC's affirmative defense notes that an online dictionary

26  explains that the word "principal" has several meanings, including both a sum of money and the

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION
TO STRIKE AFFIRMATIVE DEFENSES - 8
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

1    owners of a company. https://www.investopedia.com/terms/p/principal.asp. Similarly, the

2    Merriam-Webster dictionary defines "principal" as an adjective meaning the "most important,

3    consequential, or influential" and as a noun meaning variously "a person who has controlling

4    authority or is in a leading position," "a matter or thing of primary importance" including a

5    capital sum. https://www.merriam-webster.com/dictionary/principal. The Court can and should

6    take judicial notice of such definitions, and the well-known fact that "principal" is a common

7    English word. FRE 201.

8        Even if PFS has been using its PRINCIPAL marks for many years, it chose a common

9    English word as its mark, so its rights are and necessarily remain relatively narrow. Here, PWC's

10   use of "principal" plays on all the definitions of the word "principal," as in addition to often

11   being the first warranty, it also generates "principal" (i.e., money) for the "principals" (i.e.,

12   owners) of vehicle dealerships. Trademark law has always "tolerated some degree of confusion

13   from a descriptive use of words contained in another person's trademark." *KP Permanent Make-*

14   *Up, Inc. v. Lasting Impression I, Inc*., 543 U.S. 111, 119 (2004). Hence, trademark law does not

15   allow a plaintiff "to obtain a complete monopoly on use of a descriptive term simply by grabbing

16   it first." *KP Permanent Make-Up*, 543 U.S. at 122; *see also Nordstrom, Inc.,* No. C12-1387 TSZ

17   at *7 (finding a where multiple definitions of the term "rack" were present, Nordstrom could not

18   expect to assert its mark against businesses using a different definition of the term).

19                6.    PWC's "distinctiveness" defense is proper.

20       PWC pleads that its PRINCIPAL WARRANTY related marks are visually and aurally

21   distinct from PFS's PRINCIPAL marks. That the parties' marks are distinct such that confusion

22   is unlikely is a proper defense, as it tends to negate plaintiff's prima facie case of infringement,

23   *see Lister*, No. C18-0961JLR at *8.

24       Visual and aural distinctiveness speak to the similarity of the PRINCIPAL WARRANTY

25   and PRINCIPAL marks, a factor in the analysis of likelihood of confusion. *AMF Inc. v.*

26   *Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). In analyzing the similarity of two marks, a

court must look to the similarities at three levels: sight, sound, and meaning. *Id.* at 351.  For example, aspects such as visual focal points, *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1109 (9th Cir. 2016), shapes, *id.*, pronunciations of the words, *BBC Group NV LLC v. Island Life Restaurant Group LLC*, 413 F. Supp. 3d. 1032, 1043 (W.D. Wash. 2019) dominance of words, *LA Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 876 (9th Cir. 2014), and aural length, *see Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1359 (W.D. Wash. 2014), may factor into the comparison between two marks. Accordingly, it is proper for PWC to assert visual and aural dissimilarities between the marks—essentially, to assert that PWC does not infringe plaintiff's mark.

      7.    <u>PWC's "First Amendment" defense is proper, especially with regards to PFS' claims to fame.</u>

As plaintiff admits, the First Amendment can provide a defense to trademark infringement. *See, e.g., Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989).[1] Here, plaintiff PFS alleges that its PRINCIPAL marks are "famous" for purposes of 15 U.S.C. § 1125(c) such that – regardless of whether consumers are likely to be confused – the Court should nonetheless enjoin PWC from using the word "principal."  Of course, plaintiff must first prove that its PRINCIPAL marks are in that very narrow class of marks that are so well-known as to be part of the national consciousness.  *Blumenthal Distributing, Inc. v. Herman Miller*, 963 F.3d 859, 870 (9th Cir. 2020). And it must prove that the marks are so similar as to be "nearly identical" and "substantially similar." *Century21 Real Estate, LLC v. Century Insurance Group*, Civ. No. 03-0053-PHX-SMM, 2007 WL 484555, at *14 (D. Ariz. Feb. 8, 2007). But if it does so, PFS can dispense with the requirement of consumer confusion. *Avery Dennison Corp. v. Sumpton*, 189 F. 3d 868, 879 (9th Cir. 1999).

As the Supreme Court long ago held, a trademark "does not confer a right to prohibit the use of the word or words. . . . A trademark only gives the right to prohibit the use of [the word or

---

[1] To be clear, PWC does not raise any *Rogers* defense in its answer.

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION
TO STRIKE AFFIRMATIVE DEFENSES - 10
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

words] so far as to protect the owner's goodwill against the sale of another's product as his."

*Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924). As the Ninth Circuit previously observed,

protecting marks that consist of only a common English word without any evidence of confusion

upsets the traditional trademark balance and seems to provide prohibited "rights in gross" to such

words. *Avery Dennison Corp*., 189 F.3d at 875; *see also Sturgis Motorcycle Rally, Inc. v.

Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 330 (8th Cir. 2018) (noting that trademarks do not

confer any "rights in gross" allowing exclusive use of a word).

More recently, the Supreme Court has twice confirmed that there is no "trademark

exception" to the First Amendment. First, the Supreme Court struck down a 100+ year old

provision of the Lanham Act that prohibited registration of "disparaging" trademarks as violating

the First Amendment. *Matal v. Tam*, 137 S.Ct. 1744, 1765 (2017). Two years later, the Supreme

similarly invalidated on First Amendment grounds a provision of the Lanham Act that prohibited

registration of marks deemed "immoral" or "scandalous." *Iancu v. Brunetti*, 139 S.Ct. 2294,

2302 (2019).

As one trademark scholar has noted, "one area of trademark law that is unlikely to

survive First Amendment scrutiny after *Tam* is dilution law." Lisa P. Ramsey, "Free Speech

Challenges to Trademark Law after *Matal v. Tam*," 56 Hous. L. Rev. 401, 408 (2018). As she

goes on to explain, this is in part because "[a]ny free speech right of a trademark owner to

control the coherence of its brand message should be weighed against the free speech right of

many companies to adopt and use an identical or similar word, symbol, color, or other product

feature as a mark for different goods and services." *Id.* at 460; *accord*, Sara Gold, "Does Dilution

'Dilute' the First Amendment?: Trademark Dilution and the Right to Free Speech after *Tam* and

*Brunetti*," 59 IDEA 483, 489 (2019) (concluding that the prohibition on any non-confusing

commercial use of a word that may be contained in a famous trademark violates the First

Amendment even under intermediate scrutiny).

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION
TO STRIKE AFFIRMATIVE DEFENSES - 11
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

Admittedly, given the recency of the Supreme Court's decisions, there is little if any case law yet applying First Amendment scrutiny to famous trademark dilution claims. But fame is often pleaded, rarely proven. At this juncture, it is sufficient to note that PWC has a good faith basis for asserting that if PFS can prove that its PRINCIPAL-formative marks are indeed famous, but cannot show any actual confusion, PWC may still have a complete defense under the First Amendment. Finally, the First Amendment defense is also relevant to the issue of willfulness, as a defendant can "intend to benefit from the goodwill associated with a word . . . without intending to infringe a valid mark based on the word." *Sturgis Motorcycle Rally*, 908 F.3d at 344.

8.    PWC's "priority" defense is proper.

PFS pleads numerous registrations, as well as alleged common law rights, to various iterations of PRINCIPAL-formative marks. *E.g.*, Complaint, Ex. 5. PWC pleads that it started using PRINCIPAL WARRANTY and PRINCIPAL WARRANTY CORP. in 2009. At least some of PFS' registrations appear to involve use that post-dates PWC's first use. *E.g.*, Reg. Nos. 4,130,748; 4,396,203; 5,074,931; 5,074,932; 5,083,535; 5,083,536; 5,083,537; 5,083,538; 5,083,539; 5,150,220; 5,446,278. It is likely some of PFS' common-law marks will also turn out not have been used until after 2009, or may not still be in use. Priority of use is a well-established defense to trademark infringement. *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036, 1047 (9th Cir. 1999); *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996); *New West Corp. v. NYM Co. of Cal.,* 595 F.2d 1194, 1200–01 (9th Cir.1979).

Seniority of use is a properly pleaded affirmative defense to trademark infringement. Regardless, the existence of any marks adopted by Plaintiff after 2009 is a fact issue for discovery, and the seniority of any marks that may come out in discovery is often an issue for the factfinder. *See Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 426 (2015) (noting that whether two marks may be tacked for purposes of determining priority is a question for the jury).

1      9.      PWC's "laches" defense is proper.

2          Plaintiff's claim that "laches" is not a proper affirmative defense is, to be mild, bold. Rule

3  8(c) specifically lists "laches" as an affirmative defense, which should be the end of the matter.

4  Fed. R. Civ. P. 8(c).

5          "It is well-established that laches is a valid defense to Lanham Act claims . . .." *Jarrow*

6  *Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 835 (9th Cir. 2002). To state a defense of

7  laches, a party must show unreasonable delay and prejudice. *See Ohio Sec. Ins. Co.*, No. 3:21-

8  CV-5579-BHS at *3 (refusing to strike some affirmative defenses of laches); *Duyzend*, No. C13-

9  1508 MJP at *4 (declining to strike the affirmative defense of laches). The statute of limitations

10  for Lanham Act claims in the Western District of Washington is three years. *Eat Right Foods,*

11  *Ltd. v. Whole Foods Market, Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018). If a plaintiff files its

12  trademark infringement action more than three years after the defendant started using the

13  accused mark, there is a presumption that laches would apply. *Eat Right Foods*, 880 F.3d at

14  1115. Plaintiff's delay may also negate any finding that any infringement was "willful." *E.g.*,

15  *Sturgis Motorcycle Rally*, 908 F.3d at 345 (noting that even if willfulness is shown, "a district

16  court might determine that the defendant's willful infringement was sufficiently minor compared

17  to the plaintiff's delay and acquiescence that the balance of the equities still favors the

18  defendant.")

19          PWC has openly been using PRINCIPAL WARRANTY and PRINCIPAL WARRANTY

20  CORP. since 2009, and established its website in 2011. It has built up its business over the

21  ensuing decade-plus around that name, and would be greatly prejudiced by having to change its

22  name now.[2] PFS filed this suit on August 4, 2022; if PWC can show that PFS knew or should

23  have known of PWC's alleged infringement prior to August 4, 2019, laches may bar the claim.

24

25  _____

26  [2] PWC also operates in a highly-regulated industry, which means it cannot legally change its business name without
    getting various governmental approvals. *See, e.g.*, RCW Ch. 48.110 (governing vehicle service contract providers).

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION
TO STRIKE AFFIRMATIVE DEFENSES - 13
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

*Eat Right Foods*, 880 F.3d at 1116. As such, PWC has properly asserted the equitable defense of laches.

**D.      PWC SHOULD BE ALLOWED TO AMEND IF ANY OF ITS DEFENSES ARE FOUND TO BE DEFICIENT.**

Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). In the Ninth Circuit, that policy favoring allowing amendments is applied with extreme liberality.  *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). If the Court finds any of PWC's affirmative defenses to be deficient, PWC should be granted leave to replead.

### IV. <u>CONCLUSION</u>

For the reasons above, this Court should deny Plaintiff's motion to strike any of Defendant's affirmative defenses. If, however, the Court finds PWC has not pleaded any of its affirmative defenses sufficiently, it should grant PWC leave to amend.

DATED this 14th day of November, 2022.

s/ *Brian W. Esler*
Brian W. Esler, WSBA No. 22168
Elena M. Thompson, WSBA No. 59626
Miller Nash LLP
Pier 70, 2801 Alaskan Way, Suite 300
Seattle, WA 98121
Telephone: (206) 624-8300
Email: brian.esler@millernash.com
Email: elena.thompson@millernash.com

Attorneys for Defendant

DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION TO STRIKE AFFIRMATIVE DEFENSES - 14
(Case No. 2:22-cv-01096-RSL)
4876-3631-5707.6

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on November 14, 2022, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

4

counsel of record.

5

DATED this 14th day of November, 2022, at Seattle, Washington.

6

7

*s/ Brian W.Esler*
Brian W. Esler

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599